UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br><br>v.<br><br>$465,789.31 SEIZED FROM TERM LIFE INSURANCE POLICY NO. PJ 108 002 588 IN THE NAME OF ROBERT E. LEE, JR. AT AXA EQUITABLE LIFE INSURANCE COMPANY, NEW YORK, NEW YORK,<br>   Defendant. | No. 3:15-cv-1353 (JAM) |

[Claimant: CATHY L. LEE.]

**RULING DENYING CLAIMANT'S MOTION TO DISMISS**

The United States brings this forfeiture action to recover the proceeds of a life insurance policy issued in the name of Robert E. Lee, Jr. It contends that, before his death, Lee paid the policy premiums with funds traceable to wire fraud he committed in violation of 18 U.S.C. § 1343, and that the insurance proceeds are therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(C). His late wife, claimant Cathy Lee, moves to dismiss this action on the theory that Lee would have made his premium payments even if he had not been receiving criminally-derived funds. Because the Government has plausibly alleged that the premiums were funded with criminal proceeds, I will deny claimant's motion to dismiss.

**BACKGROUND**

In 2011, the Federal Bureau of Investigation began investigating Robert E. Lee, Jr., on suspicion of wire fraud. Because Lee ultimately pleaded guilty and claimant does not dispute that Lee was engaging in wire fraud, it is not necessary for me to recount the criminal allegations in detail. According to the Government, between January 2011 and March 2014, Lee defrauded

investors by operating a "Ponzi scheme." While engaging in this scheme, he principally received and disbursed funds out of his personal Citibank account.

According to claimant, Lee continuously worked between 1987 and 2013 as an account executive and broker at investment agencies in New York and Connecticut. She further asserts that his salary was typically between $100,000 and $200,000 in this period. Beginning in November 2011 at the latest, Lee began making regular premium payments totaling over $11,376 on his $1,000,000 life insurance policy. He made these payments out of his personal Citibank account, which the Government contends was "funded principally with funds that Lee fraudulently obtained from investor-victims." Doc.#1 ¶ 37. In August 2013, Lee applied for, and was granted a disbursement of $500,000 as an early death benefit from the policy.

Lee was indicted and charged on five counts of wire fraud, in violation of 18 U.S.C. § 1343, in October 2014. No. 3:14-cr-201 (JAM). He pleaded guilty to all counts in December 2014. In November 2014, the Government filed a civil forfeiture action against the balance of the early death disbursement, in the amount of $358,077.17, to which no claimants responded. In February 2015, following the entry of a default judgment, this Court entered a Decree of Forfeiture to the defendant currency. Doc. #18, No. 3:14-cv-1749 (JAM).

Following a bout with cancer, Lee died on the morning of April 16, 2015. Upon his death, the life insurance policy provided for a further benefit of nearly $500,000, to be paid to claimant. On April 17, 2015, the Federal Bureau of Investigation, after executing a warrant, seized the remaining life insurance proceeds of $465,789.31.

Subsequently, the Government filed this action under 18 U.S.C. § 981(a)(1)(C) to forfeit and condemn to the use and benefit of the United States the insurance proceeds. Doc. #1.

Claimant has moved to dismiss this action for failure to state a claim upon which relief can be granted. Doc. #11.

## DISCUSSION

Forfeiture actions are subject to a slightly different pleading standard than typical lawsuits. *See In re 659 Fifth Ave. and Related Properties*, 777 F. Supp. 2d 529, 541-42 (S.D.N.Y. 2011). Motions to dismiss in such actions are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and also by Fed. R. Civ. P. 12(b)(6) to the extent it does not conflict with the Supplemental Rules. *See U.S. v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010).

The principles governing this Court's consideration of a motion to dismiss under Rule 12(b)(6) are well established. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Rule G(2)(f) requires that a forfeiture complaint must also "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government's burden of proof is the preponderance of the evidence standard. *See* 18 U.S.C § 983(c)(1). Further, Rule E(2)(a) provides "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able . . . to commence an investigation of the facts and to frame a responsive pleading." These constraints are issues "of

pleading, not proof at trial." *See $22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 248. Thus, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish to forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

Claimant contends that the Government does not state a claim on which relief can be granted because Lee would have paid his premiums even if he had not received any funds from criminal activity. She argues that proceeds for purposes of a forfeiture action must be "property that a person would not have *but for* the criminal offense." Doc. #11 at 7; *see United States v. Grant*, 2008 WL 4376365, at *2 fn.1 (S.D.N.Y. 2008). The Second Circuit has stated in a summary order that, under CAFRA, "the Government need only prove … that the money is linked to a criminal offense." *Escobar v. U.S. Currency in the Sum of One Hundred Eighty-Five Thousand Dollars More or Less*, 280 F. App'x 36, 37 (2d Cir. 2008).

At this stage, there is no need for me to determine the causality standard. Claimant's arguments rely on facts outside the complaint, and cannot be accepted or deemed persuasive without further factual development. It is therefore immaterial for purposes of this motion whether the Government must establish that wire fraud was the but-for cause that allowed Mr. Lee to acquire the insurance policy. Claimant contends that Lee had originally purchased the policy in 2008, three years before the Government alleges his scheme to defraud began. She further contends that Lee made more than enough legitimate income in the relevant period to pay the premiums with legitimate funds. These arguments will be relevant at a later stage of this litigation, when the parties have developed a factual record, but they are unpersuasive at the pleading stage.

The Government has met its burden to survive a motion to dismiss. It alleges that, for at least three years, Lee paid the premiums out of a Citibank account "funded principally with funds that Lee fraudulently obtained from investor-victims." Doc. #1 ¶ 37. Any property that is derived from proceeds traceable to wire fraud is subject to civil forfeiture. 18 U.S.C. § 981(a)(1)(C) (providing that "[a]ny property . . . derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity'"—which includes wire fraud—are subject to forfeiture); *see also* 18 U.S.C. § 1956(c)(7); 18 U.S.C. § 1961(1). If the Government proves that criminal activity funded Lee's premium payments, claimant may have to forfeit the life insurance disbursement. *Cf. United States v. Betancourt*, 422 F.3d 240, 252 (5th Cir. 2005) (lottery winnings subject to criminal forfeiture when purchase of lottery ticket was funded exclusively through drug dealing). Claimant's factual allegations notwithstanding, the Government's complaint adequately alleges facts to support a reasonable belief that it will be able to show by a preponderance of the evidence that the insurance proceeds are traceable to wire fraud. I will therefore allow the forfeiture action to proceed.

## CONCLUSION

For the foregoing reasons, claimant's motion to dismiss, Doc. #11, is DENIED.

It is so ordered.

Dated at New Haven this 10th day of December 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge